USDC SCAN INDEX SHEET











USA

BOGART

SUI  3/5/98 8:31
3:98-CR-00519
*1*
*CRINDI.*

RECEIVED UNSEALED

FEB 19  3 44 PM

~~SECRET~~

FILED

FEB 19 1998

CLERK, US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

April 1997 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>LYNN DALE BOGART (1),<br>    aka Eric Von Houlte,<br>CARMEN C. LUCCI IV (2),<br>RUSSELL J. CONTE (3),<br>    aka Russell Pinder,<br><br>    Defendants | Criminal No. '98 cr 0519 JM<br><br>**I N D I C T M E N T**<br><br>Title 18, U.S.C., Sec. 1343 - Wire Fraud; Title 18, U.S.C., Sec. 2314 - Inducing Interstate Travel to Defraud and Transportation of Stolen Property; Title 18, U.S.C., Sec. 1956(a)(1)(A)(i) - Money Laundering to Promote Illegal Activity; Title 18, U.S.C., Sec. 1956(a)(1)(B)(i) - Money Laundering; Title 18, U.S.C., Sec. 1957 - Money Laundering; Title 18, U.S.C., Sec. 2 - Aiding and Abetting |

The Grand Jury Charges:

### General Allegations

At all relevant times:

1.  Defendant LYNN DALE BOGART, aka Eric Von Houlte, (hereinafter "defendant BOGART") was a part-time resident of San Diego County, California, residing intermittently at 5605 Friars Road, No. 307, San Diego, California; 1518 Glorietta Boulevard, Coronado,

//

JWB:nlv:San Diego
02/18/98

1 | California, and Unit No. 907, Coronado Shores, 1760 Avenida del Mundo,
2 | Coronado, California.

3 |     2.    Defendant CARMEN C. LUCCI IV (hereinafter "defendant LUCCI")
4 | was a resident of San Diego, California, residing at 6436 Lochmoor
5 | Drive, San Diego, California.

6 |     3.    Kenneth Murdock (hereinafter "Murdock") was a businessman in
7 | the health food business who resided and had a place of business in
8 | the State of Utah.

9 |     4.    Defendant RUSSELL J. CONTE, aka Russell Pinder, (hereinafter
10 | "defendant CONTE"), a resident of Utah and Arizona, was a long-time
11 | acquaintance and trusted friend of Murdock and was employed by Murdock
12 | as a financial advisor, advising Murdock on investments of Murdock's
13 | money, among other things.

14 |     5.    "The Enterprise Group", sometimes referred to as "The
15 | Enterprise Group, Ltd.", was a business name used by defendants BOGART
16 | and LUCCI in their dealings with Murdock. For effect on potential
17 | investors, defendants BOGART and LUCCI had adopted this name from the
18 | prominently displayed name of a large office building, Enterprise
19 | Plaza, located at 2820 Camino Del Rio South, San Diego, California,
20 | in which defendants BOGART and LUCCI had no interest except rented
21 | office space.

22 |     6.    MI, L.C., was a limited liability company, wholly owned by
23 | Murdock, formed by Murdock under the laws of Utah and used by Murdock
24 | as an investment vehicle. All of Murdock's investments with "the
25 | Enterprise Group" were made in the name of MI, L.C.
26 | //
27 | //
28 | //

## Count 1

### (Wire Fraud - 18 U.S.C. §1343)

1. Beginning on or about November 12, 1992, in the Southern District of California, and elsewhere, defendants LYNN DALE BOGART, aka Eric Von Houlte, (hereinafter "defendant BOGART"), CARMEN C. LUCCI IV (hereinafter "defendant LUCCI") and RUSSELL J. CONTE, aka Russell Pinder, (hereinafter "defendant CONTE") did devise and intend to devise a scheme and artifice to defraud Kenneth Murdock (hereinafter "Murdock"), and to obtain the money and property of Murdock by means of false and fraudulent pretenses, representations and promises.

### The Scheme

2. It was a part of said scheme and artifice that defendants BOGART and LUCCI would hold themselves out as a company called "The Enterprise Group", which they would represent to be a company which invested in delinquent consumer loans and credit card debt ("debt paper"), at a fraction of the principal of the debt, for collection or resale at a profit.

3. It was a part of the scheme and artifice to defraud that defendants BOGART and LUCCI would corruptly offer, and defendant CONTE would corruptly agree to accept, a commission or "finder's fee", based upon the amount invested, for persuading Murdock to invest money with "The Enterprise Group".

4. It was part of the scheme and artifice to defraud, that in or about April 1993, defendant CONTE demanded, and defendant BOGART agreed, that CONTE share with BOGART on an equal basis in all money that Murdock invested after Murdock's second investment.

//

5. It was a part of the scheme and artifice to defraud that defendants BOGART and LUCCI would use boxes of old loan files, stored in a unit at a public storage facility in El Cajon, California, in addition to other uses, as "props" to bolster their false representations to Murdock of the scope of the business of their company, "The Enterprise Group".

6. It was a part of the scheme and artifice that defendant CONTE, who willingly had been corrupted by the other defendants, in his role as financial advisor to Murdock, would introduce and promote defendants BOGART and LUCCI to Murdock as persons who were making a lot of money dealing in debt paper.

7. It was a part of said scheme and artifice that defendant CONTE would betray his trust as a friend and financial advisor to Murdock by falsely representing to Murdock in substance that investments with "The Enterprise Group" would be wise and prudent investments for Murdock, while failing to disclose to Murdock that he was receiving from defendants BOGART and LUCCI a share of the money from Murdock's investments.

8. It was part of the scheme and artifice that the defendants would falsely represent to Murdock that "The Enterprise Group" would be joint venturers with Murdock in any investment that Murdock made, in that they would purchase, or had purchased, debt paper for double the amounts of Murdock's investments and that Murdock and "The Enterprise Group" would share equally in the profits from said debt paper, thus conveying the false impression that "The Enterprise Group" was taking the same financial risk as Murdock in any investment he made.

//

4

9.  It was further a part of the scheme and artifice that the defendants would falsely represent to Murdock that, regardless of the profitability of debt paper purchased under this arrangement, Murdock's investments would be treated as loans to "The Enterprise Group" for a certain fixed period of time at a guaranteed interest rate of 15%.

10.  It was further a part of the scheme and artifice that it was falsely represented to Murdock that he would have as security for his investments and loans all the debt paper purchased with the combined funds from Murdock and "The Enterprise Group", an amount which was falsely represented to Murdock as double the amount of Murdock's investment.

11.  It was a part of the scheme and artifice that the defendants would falsely represent, by grossly overstating, to Murdock the amounts of money they were expending to purchase the debt paper in which Murdock was purportedly investing with "The Enterprise Group".

12.  It was a part of the scheme and artifice that defendants BOGART and LUCCI, assisted by defendant CONTE, would persuade Murdock to make a trial investment of $200,000 (the "bait investment"), which they would then falsely represent had made a $20,000 profit in a period of approximately six weeks, to entice Murdock to make additional and larger "investments" with them.

13.  It was further a part of the scheme and artifice that defendants BOGART and LUCCI would in fact pay Murdock the $220,000, representing his investment and the purported profit, in substantial part out of money the defendants induced Murdock to invest after telling him about the purported profit from the "bait investment".

//

14. It was further a part of said scheme and artifice that, after Murdock had made his fourth investment, the defendants from time to time would falsely represent to Murdock that they were negotiating with various potential buyers of the debt paper, or they had developed various strategies to collect on the debt paper, all designed to lull Murdock into a false sense of security as to his investments, that is, believing that the defendants were working in his interest.

15. It was a part of said scheme and artifice that from time to time defendants would induce Murdock to travel in interstate commerce from Utah to San Diego, California, in order to show Murdock their office and the storage unit containing the old loan files as part of their false representations of the scope of the business of "The Enterprise Group", to induce Murdock to make investments with "The Enterprise Group", and for a meeting designed to convince Murdock that the defendants had indeed invested money as represented in order to conceal from Murdock the fact that defendants were defrauding him.

16. It was a part of the said scheme and artifice that through the above false representations and others made by the defendants, and through the persuasion of defendant CONTE as a trusted advisor, Murdock was induced to invest a total of approximately $3,100,000 with "The Enterprise Group", in four separate transactions, of which he received a return on only the first, that is, the "bait investment" of $200,000.

17. It was a part of the scheme and artifice to defraud that neither "The Enterprise Group" nor any one else had made investments equal to the investments of Murdock as promised and represented, that purchases of debt paper were made with only a minuscule fraction of the amounts represented to Murdock, and that the defendants divided

6

up the bulk of Murdock's investment funds among themselves, for their own personal use and benefit, all to Murdock's detriment and loss in the amount of approximately $2,900,000.

18. It was further a part of the scheme and artifice that the defendants would use bank accounts in the name of a law firm and overseas bank accounts to conceal, disguise and promote the scheme to defraud.

19. On or about April 14, 1993, in the Southern District of California, defendants BOGART, LUCCI and CONTE, having devised and intending to devise the scheme described in paragraphs 2 through 18 above, for the purpose of executing, and attempting to execute, such scheme and artifice, did transmit and cause to be transmitted by means of wire, in interstate commerce between California and Utah, certain writings, signs, signal and sounds, that is, a facsimile transmission of a LOAN AGREEMENT between MI, L.C., and "THE ENTERPRISE GROUP, LTD."; in violation of Title 18, United States Code, Sections 1343 and 2.

### Counts 2 and 3

(Inducing Interstate Travel to Defraud - 18 U.S.C. § 2314)

1. The allegations of paragraphs 1 through 18 of Count 1 are realleged as though set forth in full.

2. On or about the dates set forth in Counts 2 through 10 below, in the Southern District of California, defendants LYNN DALE BOGART, aka Eric Von Houlte, CARMEN C. LUCCI IV and RUSSELL J. CONTE, aka Russell Pinder, having devised and intending to devise the scheme described in paragraphs 2 through 17 of Count 1 above, in the execution and concealment of such scheme, did induce Kenneth Murdock
//

to travel in interstate commerce from Utah to San Diego on the dates set forth below:

| COUNT | DATE OF TRAVEL |
|---|---|
| 2 | February 25, 1993 |
| 3 | November 28, 1994 |

All in violation of Title 18, United States Code, Sections 2314 and 2.

## Counts 4 through 10

(Interstate Transportation of Stolen Property - 18 U.S.C. §2314)

1.  On or about the dates set forth in Counts 4 through 10 below, in the Southern District of California, defendants LYNN DALE BOGART, aka Eric Von Houlte, CARMEN C. LUCCI IV, and RUSSELL J. CONTE, aka Russell Pinder, did cause to be transported, transmitted and transferred in interstate commerce from Salt Lake City, Utah, to Coronado, California, securities and money of the value of $5,000 and more, as specifically set forth below, knowing the same to have been taken by fraud:

| COUNT | DATE | VALUE |
|---|---|---|
| 4 | March 13, 1993 | $450,000 |
| 5 | March 13, 1993 | $200,000 |
| 6 | April 13, 1993 | $200,000 |
| 7 | April 13, 1993 | $500,000 |
| 8 | April 21, 1993 | $514,555.21 |
| 9 | June 28, 1993 | $547,000 |
| 10 | July 13, 1993 | $500,000 |

All in violation of Title 18, United States Code, Sections 2314 and 2.

//
//
//

## Count 11

(Money Laundering to Promote Illegal Activity - 18 U.S.C. §1956(a)(1)(A)(i))

On or about April 8, 1993, in the Southern District of California, defendants LYNN DALE BOGART, aka Eric Von Houlte, and CARMEN C. LUCCI IV, knowing that the property involved in a financial transaction represented the proceeds of some form of unlawful activity, did conduct a financial transaction, that is, the purchase of a cashier's check in the amount of $220,000 from Wells Fargo Bank, a financial institution the activities of which affect interstate and foreign commerce, which purchase in fact involved the proceeds of specific unlawful activity, that is, wire fraud in violation of Title 18, United States Code, Section 1343, and inducing interstate travel to defraud in violation of Title 18, United States Code, Section 2314, as charged in Counts 1 through 3 of this indictment, with the intent to promote the carrying on of said specified unlawful activity; in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i) and 2.

## Counts 12 through 16

(18 U.S.C. §1956(a)(1)(B)(i)-Money Laundering)

On or about the dates set forth in Counts 12 through 16 below, in the Southern District of California, defendants named in Counts 12 through 16 below, knowing that the property involved in the particular financial transaction represented the proceeds of some unlawful activity, did conduct financial transactions which in fact involved the proceeds of specified unlawful activity, that is, wire fraud and inducing interstate travel to defraud, as charged in Counts 1 through 3 of this indictment, knowing that the transaction was

designed in whole and in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of specified unlawful activity, in that, on the dates set forth in Counts 12 through 16 below, the named defendants did deposit money into bank accounts in the name of the law firm of Rose, Munns, Fout, Breidenbach & Chin at Wells Fargo Bank, Coronado, California, a financial institution the activities of which affected interstate and foreign commerce, knowing that the money had been derived through wire fraud and inducing interstate travel to defraud, to disguise and conceal the fact that the defendants were using the victim's money for their own use and benefit and to conceal the source, ownership and control of said money:

| COUNT | DATE | DEFENDANT(S) | AMOUNT |
|---|---|---|---|
| 12 | 3/18/93 | LYNN DALE BOGART, aka Eric Von Houlte, and CARMEN C. LUCCI IV | $450,000 |
| 13 | 4/9/93 | LYNN DALE BOGART aka Eric Von Houlte, and CARMEN C. LUCCI IV | $200,000 |
| 14 | 5/3/93 | LYNN DALE BOGART, aka Eric Von Houlte, and RUSSELL J. CONTE, aka Russell Pinder | $1,214,555.21 |
| 15 | 6/30/93 | LYNN DALE BOGART, aka Eric Von Houlte and RUSSELL J. CONTE, aka Russell Pinder | $547,000 |
| 16 | 7/15/93 | LYNN DALE BOGART, aka Eric Von Houlte, and RUSSELL J. CONTE, aka Russell Pinder | $500,000 |

All in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

//

10

## Counts 17 through 21

(Money Laundering - 18 U.S.C. §1957)

On or about the dates set forth in Counts 17 through 21 below, in the Southern District of California, the defendants named in Counts 17 through 21 below, did knowingly engage in monetary transactions in criminally derived property, that is, the transfer of money which had been derived from specified unlawful activity, that is, wire fraud and inducing interstate travel to defraud as charged in Counts 1 through 3 of this indictment, in amounts greater than $10,000, as specifically set forth in Counts 17 through 21 below, in foreign commerce, from bank accounts at Wells Fargo Bank, Coronado, California, to bank accounts in Curacao, Netherlands Antilles, in the names of Corsica Corporation ("Corsica"), A.V.V., and Dunedin International ("Dunedin"):

| COUNT | DATE | DEFENDANT(S) | AMOUNT | ACCOUNT NAME |
|---|---|---|---|---|
| 17 | 4/2/93 | LYNN DALE BOGART, aka Eric Von Houlte and CARMEN C. LUCCI IV | $203,000 | Corsica |
| 18 | 5/5/93 | LYNN DALE BOGART, aka Eric Von Houlte, and RUSSELL J. CONTE, aka Russell Pinder | $900,000 | Corsica |
| 19 | 7/22/94 | LYNN DALE BOGART, aka Eric Von Houlte | $ 97,300 | Dunedin |
| 20 | 8/3/94 | LYNN DALE BOGART, aka Eric Von Houlte | $ 69,000 | Dunedin |

//
//
//

11

| | | | | |
|---|---|---|---|---|
| 21 | 8/12/94 | LYNN DALE BOGART, aka Eric Von Houlte | $ 82,600 | Dunedin |

All in violation of Title 18, United States Code, Sections 1957 and 2.

DATED: February 19, 1998.

A TRUE BILL:

*Kattie A. Frank*
Foreperson

ALAN D. BERSIN
United States Attorney

By: *James W. Brannigan*
JAMES W. BRANNIGAN JR.
Assistant U.S. Attorney