USDC SCAN INDEX SHEET

















LMM    12/14/98    10:20

3:98-CR-00519   USA V. BOGART

*51*

*CRMEMSUP.*

1  Donald W. MacPherson
2  3404 W. Cheryl Dr., #A250
   Phoenix, AZ  85051
3  Ph. 602-866-9566
   Fax 602-866-3799
4  Bar #005627 (Arizona)
   Counsel for Defendant
5
   John Mitchell
6  2445 5th Avenue, #200
   San Diego, CA  92101
7  Ph. 619-237-9155
   Fax 619-237-0128
8  Bar # 032237
   Local Counsel
9

10            IN THE UNITED STATES DISTRICT COURT

11           SOUTHERN DISTRICT OF CALIFORNIA

12  UNITED STATES OF AMERICA,     )    CR Case No. 98-0519-JM
                                  )    Sentencing: 12/18/98
13       Plaintiff,               )              8:30 a.m.
                                  )    DEFENDANT CONTE'S
14       v.                       )    PRESENTENCE
                                  )    MEMORANDUM
15  RUSSELL J. CONTE,             )
                                  )
16       Defendant.               )
    _____)

The MacPherson Group
A Professional Corporation
Attorneys at Law
3404 West Cheryl Drive
Suite A-250
Phoenix, Arizona 85051

17
                        **TABLE OF CONTENTS**

                                                    Page
18  I.    OVERVIEW                                     2

19  II.   SUMMARY OF WRITTEN PLEA AGREEMENT            2

20  III.  CRIMINAL HISTORY CATEGORY                    4

21  IV.   ABUSE OF TRUST: SENTENCING ENHANCEMENT
22        UNDER §3B1.3 IS INAPPROPRIATE IN THIS CASE   5

23        A.   The Plea Agreement                      5
          B.   Application Note                        6
24        C.   General Principles                      7
          D.   The Factual Basis                       9
25        E.   Case Discussion                        10
          F.   CONTE: Not a "Fiduciary" or a "Trustee" 12
26        G.   Parallel Cases                         15
          H.   Ninth Circuit Cases                    17

27  V.    REQUEST FOR DOWNWARD DEPARTURE              19

28  VI.   SUMMARY AND CONCLUSION/CONTE'S SENTENCING REQUESTS  19



51

EXHIBITS
1   Guideline Calculation Chart
2   Criminal History Calculation Chart
3   Amortization
4   Checks
5   Sentencing Summary Chart

I.   **OVERVIEW**

CONTE, age 41, married with three children, has plead guilty to one count of wire fraud for his involvement in a fraudulent scheme in which his former friend, MURDOCK, lost $2.7 million. CONTE believes he is in Criminal History Category II, and, without downward departure but with -3 for acceptance of responsibility and without +2 for abuse of position of trust, has a total offense level of 18, which results in a Guideline range of 30-37 months. CONTE asks for departure of at least 10 levels for a Guideline range of 4-10 months[1], Zone B, and halfway house/work release.  By separate motion CONTE requests downward departure on various grounds, the most important of which are post-conduct/pre-criminal investigation rehabilitation and restitution and diminished capacity/bi-polar condition.

II.   **SUMMARY OF WRITTEN PLEA AGREEMENT**

By the written plea agreement, CONTE has plead to one count of wire fraud, <u>18 U.S.C. §1343</u>.   Under the detailed factual basis

---

[1] If the court agrees with CONTE and finds no additional 2 points for abuse of position of trust, CONTE'S offense level is 18: 6 + 13 + 2 - 3 = 18.  An offense level of 18 and Criminal History Category of II yields 30-37 months, Zone D.  A downward departure of 10, an offense level of 8 and a Criminal History Category of II yields 4-10 months, Zone B.  If the Government prevails on the position of trust issue and the court finds Criminal History Category II and departs downward 10 levels, this yields 8-14 months, Zone C.

A Professional Corporation
Attorneys at Law
3404 West Cheryl Drive
Suite A-250
Phoenix, Arizona 85051

contained at pages 3-9, the fraudulent scheme is explained.  In short, CONTE, then living in Utah, recommended that his friend, MURDOCK in Utah, invest with BOGART and LUCCI, both of San Diego. Unknown to MURDOCK, CONTE and BOGART agreed that CONTE would receive 10% of all monies MURDOCK invested with BOGART, and CONTE in fact received the 10% monies.  It was not until MURDOCK invested over a million dollars with BOGART that CONTE realized that BOGART was scamming MURDOCK.  Thus, BOGART was defrauding both MURDOCK and CONTE, and at the same time CONTE defrauded MURDOCK by not informing MURDOCK of the 10% CONTE was receiving.  In addition, once CONTE discovered BOGART'S fraud, he agreed to the continuation and entered into an agreement with BOGART under which CONTE was to receive a higher percentage.

At page 13 of the plea agreement the parties agree to recommend a base offense level of 6, +13 for loss of more than $2.5 million, +2 for more than minimal planning, and -3 for acceptance of responsibility, resulting in an adjusted offense level of 18. In addition, the Government will recommend +2 points for violation of position of trust "as MURDOCK'S financial advisor and friend" and CONTE has leave to oppose the adjustment, which he has done by his objections to the PSR and this memorandum.  There is no agreement as to the Criminal History Category.

As to departures, CONTE may argue for downward departure on any ground and he has filed a Motion for Downward Departure.  The Government opposes any departure, but agrees not to recommend any upward departure. Id. pg.14.  The Government recommends a sentence of 41 months. Id. at pg.14.

The parties do not make any recommendation with respect to a fine, but jointly recommend that CONTE pay restitution in the amount of $2,691,555 to MURDOCK. Id. at pg.16.

Finally, CONTE waives his appeal in any collateral attack unless the court imposes a custodial sentence greater than the high end of the Guidelines in accordance with the offense level agreed to and recommended by the parties, which is 18. Id. at pg.16. The Government's position is that the Criminal History Category is III, whereas CONTE argues that it is II. Again, under Category III, offense level 18, the Guideline range is 33-41 months; under Category II, offense level 18, the range is 30-37 months; thus, the high end with respect to an appeal is 41 and 37 months, respectively.

III. CRIMINAL HISTORY CATEGORY

The probation officer calculated a Criminal History Category of III; the Government objected and added 1 point, which also resulted in a III. The Defendant's position is that the Criminal History Category is II. See Charts, EXHIBITS 1 and 2, attached.

It is clear that the federal courts give deference to a state court's decision to vacate a criminal judgment and sentence. See, e.g., U.S. v. Guthrie, 931 F.2d 564, 572 (9th Cir. 1991) (where "state court vacates a defendant's prior state conviction, the sentence resulting from that conviction may not influence the defendant's criminal history score under the Guidelines."). Moreover, it is clear that home detention is not imprisonment. See, e.g., U.S. v. Phipps, 68 F.3d 159, 162 (7th Cir. 1995) (imprisonment used in the Guidelines means time in a penal

A Professional Corporation
Attorneys at Law
3404 West Cheryl Drive
Suite A-250
Phoenix, Arizona 85051

institution; home detention is not imprisonment; it is a "substitute for imprisonment."). Likewise for work release. <u>See also</u>, <u>U. S. v. Compton</u>, 82 F.3d 179, 183-184 (7th Cir. 1996) ("imprisonment" is "time actually spent in a penal institution;" citing <u>Phipps</u>).

Thus, as shown in EXHIBIT 2, CONTE receives 3 criminal history points: 1 for the Utah federal "sentence of imprisonment" of less than 60 days, and 2 for commission of the offense while on probation. Contrary to what the Government claims, CONTE does not receive 1 point under <u>§4A1.1(e)</u> (offense committed within 2 years of prior offense) because (e) applies <u>only</u> to (a) (1 year or more) and (b) (6 months or more) offenses, and CONTE has none; CONTE'S Utah federal offense is a (c) (less than 60 days) because the "sentence of imprisonment" was modified to a six-week (approximately 45 days) sentence.[2]

## IV.   ABUSE OF TRUST: SENTENCING ENHANCEMENT UNDER §3B1.3 IS INAPPROPRIATE IN THIS CASE.

### A.   The Plea Agreement

The plea agreement at pg.14 permits the Government to recommend, and CONTE to oppose, application of a two-level upward adjustment for "violation of a position of trust," pursuant to <u>§3B1.3</u>, which calls for an upward adjustment where CONTE "abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission of or concealment of the offense." The Government makes no claim as to

---

[2] In CONTE's objections to the PSR, incorporated by reference, CONTE submitted court records and evidence of the Utah federal sentence modification.

skill, only as to trust; and as the circuit cases demonstrate, friendship is not enough.   CONTE submits that the §3B1.3 is wholly inapplicable to the facts of this case.

### B.   Application Note

Application Note 1 to §3B1.3 states that "public or private trust refers to a position of public or private trust characterized by professional or managerial discretion (i.e., substantial discretionary judgment that is ordinarily given considerable deference)." Application Note 2 defines special skill as "a skill not possessed by members of the general public and usually requiring substantial education, training, or licensing.   Examples would include pilots, lawyers, doctors, accountants, chemists, and demolition experts."   It is significant to note that the Application Note was amended, which amendment took effect on November 1, 1993.   By the amendment, the Commission places the emphasis on managerial and professional discretion.   Thus, this court should be watchful for any pre-November 1, 1993 cases upon which the Government relies.   The impact of the amendment is well illustrated in the case of U.S. v. Recco, 151 F.3d 29 (1st Cir. 1998) in which the court held that a receptionist/switchboard operator at a police headquarters did not occupy a position of trust where she unlawfully gave notice of an impending search and seizure.   In Recco at 31, the court explains that:   "The Application Notes, as amended in 1993, explain that positions of trust are characterized by significant discretion and minimal supervision:" and then goes on to quote the new Application Note, which we quote here in part:

Page 6

"Public or private trust" refers to a position of public or private trust characterized by _professional or managerial discretion_ (i.e., substantial discretionary judgment that is ordinarily given considerable deference). Persons holding such positions ordinarily are subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature. For this enhancement to apply, the position of trust must have contributed in some significant way to facilitate in the commission or concealment of the offense (e.g. by making the detection of the offense or the defendant's responsibility for the offense more difficult). This adjustment, for example, would apply in the case of an embezzlement of a client's funds by an attorney serving as a guardian, a bank executive's fraudulent loan scheme, or the criminal sexual assault of a patient by a physician under the guise of an examination. ***"  (Emphasis added.)

In _Recco_ at 32, the court found that, although Recco's "position afforded her access to information," it did not repose "in her" a "discernable discretion." In fact, the prosecutor admitted that her position "involved no significant discretionary authority. _Id_. Likewise for CONTE.

C.   **General Principles**

The prosecution bears the burden of establishing, by a preponderance of evidence, operative facts which rendered the application of a sentence enhancement appropriate in any given case. _See, e.g., U.S. v. Howard_, 894 F.2d 1085, 1090 (9th Cir. 1980).

With respect to the concern of "position of trust," the Commission has provided little guidance in identifying a qualifying relationship, other than to note the requirement of "professional or managerial discretion." Circuit opinions on this issue, however, elucidate certain principles which are pertinent in the present context. For example, it has been noted that §3B1.3 "...

The MacPherson Group
A Professional Corporation
Attorneys at Law
3404 West Cheryl Drive
Suite A-250
Phoenix, Arizona 85051

refers exclusively to employment or professional relationships ..."

U.S. v. Pardo, 25 F.3d 1187, 1190 (3rd Cir. 1994).

Exceptions to this qualifying feature do exist, but they pre-date the 1993 Application Note amendment discussed, supra.  Two cases have found the existence of a trust relationship where a mother utilized a daughter's services in narcotics offenses and a baby sitter took advantage of his position to commit sexual abuse on a minor.  U.S. v. Ledesma, 979 F.2d 816, 822 (11th Cir. 1992) (mother-daughter).  U.S. v. Zamarripa, 905 F.2d 337 (10th Cir. 1990) (baby sitter/minor).  Nonetheless, the unifying principle behind these varying contexts is "the authority given to defendant by the position which provides the wherewithal to commit the wrongful act."  Pardo, supra at 1192.  That is, "the position of trust is characterized by access or authority over valuable things."  U.S. v. Lamb, 6 F.3d 415, 421 (7th Cir. 1993).

The Sixth Circuit has noted that under §3B1.3:

> The element of professional or managerial discretion is said to be the key.  And, by focusing on the deference ordinarily accorded the substantial discretionary judgment possessed by the holder of such a position of trust, the sweep of the commentary's definition is significantly narrowed.... as used in the guideline, "position of public or private trust" is a term of art, appropriating some of the aspects of the legal concept of a trustee or fiduciary.

U.S. v. Ragland, 72 F.3d 500, 502-03 (6th Cir. 1996).  (Emphasis supplied.)  In accord, U.S. v. Jolly, 102 F.3d 46, 48-49 (2nd Cir. 1996).

It is apparent from the foregoing that, at least in the framework of economic offenses, the position of trust upon which an

Page 8

enhancement may be applied must assume the character of "trustee" or "fiduciary," bearing the element of authority or discretion which is capitalized upon by the defendant.   The total absence of these elements in CONTE'S case bars an adjustment under §3B1.3.

   D.   **The Factual Basis**

   The factual basis underlying CONTE'S guilty plea appears at pages 3-9 of the plea agreement (P.A.), and the following stipulations (emphasis supplied) are particularly relevant to the §3B1.3 issue:

      1.   "Defendant had been a <u>long time acquaintance and close personal friend</u> of Kenneth Murdock [the victim]." (PA, at p.3)

      2.   "In 1992 Murdock asked defendant, <u>who had experienced some personal financial and legal difficulties</u>, to act as an <u>advisor</u> to <u>assist</u> Murdock in investing some money..." (PA, p.3)

      3.   "Third parties [Bogart and Lucci] devised a scheme whereby, through false representations, <u>they</u> would get Murdock to invest his money with them." (PA, p.4)

      4.   "Unknown to Murdock, for whom defendant was an <u>investment advisor</u> [<u>not</u> a licensed "investment advisor"], defendant demanded a finders fee of ten percent from Bogart and Lucci..." (PA, p.4)

      5.   "Based on the presentation and persuasion by Conte, <u>Murdock</u> made a trial investment ..." (PA, p.5)

      6.   "Within a few weeks thereafter ... Murdock agreed to make a second investment ..." (PA, p.7)

7.   "<u>After</u> Murdock made the 'second investment,' defendant found out that the whole investment scheme was a fraud. Instead of telling Murdock, he demanded that Bogart make him a fifty percent partner in the proceeds of all future investments by Murdock." (PA, p.8)

8.   "Defendant, although fully involved in the scheme, continued to act as <u>Murdock's advisor</u>, and Murdock continued to rely upon the <u>investment advice</u> being given by his <u>good friend</u>." (PA, p.8)

It is apparent from the core stipulations that the concept of "position of trust" in this case derives from CONTE'S characterization as a personal friend and "investment advisor," whatever that loosely means, given that CONTE was not a licensed investment advisor and did not hold himself out to be such. As the cases discussed, <u>infra</u>, will demonstrate, this is not a "distinction without a difference." As will also be obvious by the case law: neither characterization supports the enhancement under the specific facts of CONTE'S case. Moreover, it can hardly be said the MURDOCK was a vulnerable victim.

E.   **Case Discussion**

<u>Pardo</u>, <u>supra</u>, involved a defendant whose <u>personal friendship</u> with a bank manager played a role in his successful carrying out of fraudulent transactions with the bank. The existence of that friendship was not permitted to support a sentence enhancement under §3B1.3 because, "At most, [Pardo's] position as a friend allowed him the <u>opportunity</u> to commit an easily detectible wrong ... Even more clearly lacking [in Pardo's case] is the requisite

degree of <u>authority</u> over the object of his wrong .... [Pardo] <u>had no authority</u> over anyone or anything necessary to the commission of his crimes." <u>Id</u>. at 1192. (Emphasis added.) Likewise for CONTE.

Similarly, in <u>U.S. v. Mullens</u>, 65 F.3d 1560 (11th Cir. 1995), the defendant took advantage of <u>personal friendships</u> at a country club to solicit investors in a "Ponzi" scheme he had devised. The court rejected a proposed enhancement under §3B1.3, primarily because the defendant "was not in a position of trust simply by virtue of developing <u>ordinary social relationships</u>." (Emphasis supplied.) <u>Id</u>. at 1566. The court further noted that "Fraudulently inducing trust in an investor is not the same as abusing a bona fide relation of trust with the investor." <u>Id</u>. at 1567. It appears from the foregoing that a relationship of <u>friendship</u> between parties is <u>not</u> sufficient as a factual springboard for the enhancement proposed by the Government. CONTE further submits that the gratuitous description of defendant as an "investment advisor" affords no basis for the enhancement at issue. It has been noted, in the context of §3B1.3 that "an investment advisor/broker is typically an individual who is entrusted with <u>discretionary authority</u> to manage the assets of his or her clients through the application of specialized knowledge." (Emphasis added.) <u>U.S. v. Queen</u>, 4 F.3d 925, 929 (10th Cir. 1993). Such a person clearly occupies a "position of trust" under the Guidelines. See, <u>U.S. v. Tardiff</u>, 969 F.2d 1283, 1389 (1st Cir. 1992). But, of course, this means a <u>licensed</u> "investment advisor," <u>not</u> a friend/investment advisor. Moreover, the enhancement will apply to

A Professional Corporation
Attorneys at Law
3404 West Cheryl Drive
Suite A-250
Phoenix, Arizona 85051

a defendant who <u>falsely</u> represents himself to be a professional financial consultant and who then proceeds to exercise broad discretionary powers in respect to other people's assets. <u>Queen</u>, <u>supra</u>, at 929. CONTE did not claim to be a professional financial consultant.

### F.    CONTE:  Not a "Fiduciary" or a "Trustee"

The factual basis of CONTE'S plea discloses the <u>absence</u> of factors rendering CONTE in a cognizable position of private trust vis a vis the victim, MURDOCK. Nowhere is it alleged that CONTE held himself out to be a professional financial consultant. In that sense, he was no more a "fiduciary" or "trustee" than a personal friend one consults as to what kind of car to buy. More importantly, CONTE at no time exercised <u>any</u> professional or managerial discretion with respect to the invested funds at issue. CONTE initially concealed his finder's fee interest in monies fraudulently obtained by third parties, and later profited from the third party fraud when he discovered its existence. CONTE never managed the assets of the victim, and never claimed to possess special knowledge, skill or status as an investment counselor. At best for the Government, CONTE abused a position of personal friendship, but that fact alone has never been held to constitute a basis for enhancement under the trustee or fiduciary concept contemplated by the Sentencing Commission.

Moreover, whether one applies an objectively reasonable or subjectively reasonable test, it should be noted that MURDOCK'S claimed reliance on CONTE was clearly unreasonable, given that MURDOCK knew, <u>inter alia</u>, that:

1          a.    CONTE    had    mental    problems    (diminished

2    capacity/bi-polar condition);

3          b.    CONTE had been convicted of a felony in federal

4    court in Utah for failure to pay taxes and spent time in jail;

5          c.    CONTE was on probation for the federal offense;

6          d.    CONTE    repeatedly    failed    in    his    business

7    ventures.

8         In addition, recall that MURDOCK had a professional advisor,

9    BOREN, MURDOCK'S business manager.    Thus, it can hardly be said

10   that MURDOCK, a sophisticated businessman who owned a multi-million

11   dollar business, could have reasonably relied upon CONTE as his

12   friend and/or financial advisor for sophisticated financial advice

13   involving hundreds of thousands of dollars.    Moreover, how can it

14   be said that MURDOCK, a self-made millionaire in sound mental

15   health, was a vulnerable victim?    What we have here is a situation

16   of, at most, and at best for the Government, friendship, which is

17   not sufficient to cause a 2 level increase under §3B1.3.    Like

18   Pardo, the friendship does not support a sentence enhancement

19   because "at most, CONTE'S position as a friend allowed him an

20   opportunity to commit an easily detectable wrong...."    CONTE, like

21   Mullens, "was not in a position of trust simply by virtue of

22   developing ordinary social relationships."

23        While on the one hand MURDOCK complains that CONTE misled him

24   concerning CONTE'S investigation of BOGART and LUCCI, MURDOCK

25   proceeded unreasonably, with "willful blindness," ignoring the

26   adages, "If it sounds too good to be true, it is, and "Pigs get

27   fat; hogs get slaughtered."    Knowing CONTE was a convicted felon,

28                              Page 13

had lost $900,000 in investments from friends, and was bi-polar,
MURDOCK obviously should have conducted independent due diligence
with respect to the activities of BOGART, LUCCI and even CONTE.

Yes, CONTE and MURDOCK were close friends. But, CONTE was not
licensed as an attorney, accountant, financial advisor, financial
planner, stockbroker, or the like. Nor did CONTE hold out to
MURDOCK that CONTE held expertise in the area of business
investments. Quite to the contrary, by CONTE'S track record of
repeated failing businesses, CONTE was a perfect example as to how
not to proceed in business matters. MURDOCK was on notice of
CONTE'S personal (mental, emotional and financial) and professional
(business/financial) shortcomings. MURDOCK played out his role of
loyal friend to CONTE. And, MURDOCK had a business manager, BOREN,
who in fact was against the subject investments. That MURDOCK
foolishly listened to CONTE, not to BOREN, attests to MURDOCK'S
lack of business judgment, and to his greed, not to any position of
trust held or claimed by CONTE.[3]

The CONTE and MURDOCK friendship began circa 1992. MURDOCK
was undergoing marital problems and in fact was separated from his
wife and lived in a condo and kept begging CONTE to live in the
condo with him. CONTE and MURDOCK would spend considerable time
together, including not only working out, but going to basketball
games and restaurants. MURDOCK was very much taken back when
CONTE, who was already married, did not have the time to spend with
MURDOCK and would not leave CONTE'S wife and children to live with

---

[3] MURDOCK expected a quick 15% return on his money. "If
it sounds too good to be true, it is."

Page 14

The MacPherson Group
A Professional Corporation
Attorneys at Law
3404 West Cheryl Drive
Suite A-250
Phoenix, Arizona 85051

MURDOCK.   In fact, CONTE and his family moved to Arizona for purpose of getting away from MURDOCK, given MURDOCK'S overbearing, controlling, and manipulative personality.   MURDOCK'S claim that CONTE "was the key to the entire fraud," PSR page 4, line 36, is belied by the probation officer's recognition that but for BOGART and his scheme devised _ab initio_ by BOGART, there would have been no involvement by CONTE in this MURDOCK fraud.

MURDOCK did not hire CONTE as a "financial advisor at a salary of $4,000 per month," PSR, page 5, line 6.   Rather, MURDOCK, knowing of CONTE'S sordid background and financial difficulties, agreed to loan CONTE about $50,000.   In fact, an amortization statement was prepared by MURDOCK'S CPA firm at MURDOCK'S request. _See_ EXHIBIT 3.   CONTE has checks showing interest payments from CONTE to MURDOCK.   _See_ EXHIBIT 4.

Known to MURDOCK, other friends of MURDOCK and CONTE suffered financial losses after investing with CONTE:   $900,000!   These friends and their loss were all well-known to MURDOCK _before_ MURDOCK agreed to the BOGART investment.

**G.   Parallel Cases**

In _Jolly, supra_, at 48, the court found that §3B1.3 enhancement is inappropriate in a fraud case where a lender was defrauded by misrepresentations of the defendant.   The court pointed out that "The trust in short is a specific offense characteristic of fraud, and a 3B1.3 enhancement is inappropriate." The court then went on to note that: "Such reliance is the hope of every defendant who engages in fraud." _Id_.   In other words, fraud by definition requires reliance and reliance by definition requires

trust.  Thus, the position of trust must be some <u>special position of trust</u>, again demonstrating the link between "position of trust" and "special skill."  Every con man is in at least some general position of trust, otherwise the victim would not rely upon the con and no fraud would take place.   CONTE can find not a single case where trust based on friendship was sufficient to elevate the trust to a level where a §3B1.3 enhancement is warranted.  <u>See</u> <u>121 ALR Federal 323</u> (West 1994), "Increase in Base Offense Level Under Sentencing Guidelines <u>§3B1.3</u> (<u>18 U.S.C.A. Appx §3B1.3</u>) for Abuse of Position of Public or Private Trust Significantly Facilitating Commission or Concealment of Offense."

Again, the <u>Jolly</u> court relied in part on <u>Mullens</u>, <u>supra</u>, where the court "rejected the government's argument that the victim's confidence in Mullens as a result of membership in the same country club created a relationship of trust."   Likewise, the court rejected that Mullens' role was like that of an investment advisor because Mullens did not hold himself out as an investment broker or advertise his company as an investment brokerage firm.

Again, in <u>Pardo, supra</u>, friendship of a bank manager was not enough where the bank manager "who had been a personal friend of Pardo's wife for ten years and was a bridesmaid at the Pardos' wedding" was <u>negligent</u> in failing to conduct a background check on Pardo.   <u>Id</u>. at 1189.  If she had, she would have discovered that Pardo had already committed previous frauds at other banks.   In fact, given the extent of the personal relationship, the <u>Pardo</u> case comes the closest to CONTE'S situation.  The <u>Pardo</u> court, at 1192, set out three principles:

The MacPherson Group
A Professional Corporation
Attorneys at Law
3404 West Cheryl Drive
Suite A-250
Phoenix, Arizona 85051

(1) whether the position allows the defendant to commit a difficult-to-detect wrong; (2) the degree of authority which the position vests in the defendant vis a vis the object of the wrongful act; and (3) whether there has been reliance on the integrity of the person occupying the position. These factors should be considered in light of the guiding rational of the section--to punish "insiders" who abuse their position rather than those who take advantage of an available opportunity.

CONTE does not fit within any of the three categories.  See also, the Ninth Circuit's pronouncement, U.S. v. Hill, 915 F.2d 502, 509 (9th Cir. 1990), where the Ninth Circuit stated, "[T]he primary trait that distinguishes a person in a position of trust from one who is not is the extent to which the position provides the freedom to commit a difficult-to-detect wrong." Compare Queen, supra (defendant "entrusted with the discretionary authority to manage his victim's assets as he saw fit;" defendant's "asserted status as an investment advisor/broker was part of the fraudulent misrepresentations he made to his victims.")  Id. at 928.

## H.    Ninth Circuit Cases

Hill, supra, is instructive, even though it pre-dates the 1993 Application Note Amendment, supra, by which the Commission placed emphasis on managerial discretion.   In Hill at 506, the court looked at two indicia in determining that Hill, a truck driver for a moving company, had a position of trust.  This is because Hill stole family goods from a family who was storing the goods in Texas while moving to Europe.  The court found that the family had an objective means of determining Hill's honesty, but not an expedient one, and that it was difficult, if not impossible, to observe Hill during his cross-country trek; thus, he had opportunity.  Here it

Page 17

The MacPherson Group
A Professional Corporation
Attorneys at Law
3404 West Cheryl Drive
Suite A-250
Phoenix, Arizona 85051

was not at all difficult for MURDOCK to, by due diligence, check out CONTE, et al. See, U.S. v. Isaacson, 155 F.3d 1083 (9th Cir. 1998) (bank vault teller; abuse of position of trust enhancement warranted); U.S. v. Oplinger, 150 F.3d 1061 (9th Cir. 1998) (bank supply coordinator; two indicia identified in Hill met; abuse of position of trust affirmed); U.S. v. Thornton, 36 F.2d 1104 (9th Cir. 1994) (warehouse foreman; position of trust demonstrated); U.S. v. Cuff, 999 F.2d 1396 (9th Cir. 1993) (postal employee; not in position of trust); U.S. v. Hoang, 106 F.3d 410 (9th Cir. 1997) (bookkeeper; abuse of trust demonstrated); U.S. v. McCoy, 96 F.3d 1452 (9th Cir. 1996) (president of corp; no position of trust); U.S. v. Chatter, 94 F.3d 653 (9th Cir. 1996) (school business manager; position of trust demonstrated); U.S. v. Sabbaghi, 91 F.3d 157 (9th Cir. 1996) (defendant represented that he was a licensed stockbroker/expert; position of trust demonstrated); U.S. v. Dearborn, 995 F.2d 233 (9th Cir. 1993) (personal banker who handles functions not done by ordinary tellers abused position of trust); U.S. v. Ajiboye, 961 F.2d 892 (9th Cir. 1992) (mail carrier; abuse of position of trust demonstrated); U.S. v. Ray, 959 F.2d 243 (9th Cir. 1992) (customer service rep privy to confidential financial information; abuse of trust demonstrated); U.S. v. Stover, 951 F.2d 364 (elementary school teacher; position of trust demonstrated); U.S. v. Barnes, 125 F.3d 1287 (9th Cir. 1997) (pharmacist; 2-level enhancement for abuse of position of trust or use of special skill affirmed); U.S. v. Duran, 15 F.3d 131 (9th Cir. 1994) (sheriff's deputy; abuse of position of trust enhancement affirmed); U.S. v. Christiansen, 958 F.2d 285 (9th Cir. 1991) (credit union branch

The MacPherson Group
A Professional Corporation
Attorneys at Law
3404 West Cheryl Drive
Suite A-250
Phoenix, Arizona 85051

representative; position of trust demonstrated); and U.S. v. Cozzo, 156 F.3d 1239 (9th Cir. 1998) (office manager for medical practice; abuse of position of trust demonstrated).

**V.    REQUEST FOR DOWNWARD DEPARTURE**

CONTE has filed a separate motion requesting downward departure.

**VI.   SUMMARY AND CONCLUSION/CONTE'S SENTENCING REQUESTS**

CONTE requests the following:

1.    Criminal History Category II;

2.    No increase of 2 points for position of trust under §3B1.3;

3.    Downward departure of at least 10 levels for a Guideline range of 4-10 months (Zone B) and halfway house/work release;

4.    In event of a "sentence of imprisonment," self surrender no earlier than 30 days after sentencing.

**EXHIBITS:**
    1    Guideline Calculation Chart
    2    Criminal History Calculation Chart
    3    Amortization
    4    Checks
    5    Sentencing Summary Chart

//

//

Page 19

1    DATED this *10* day of December, 1998.

2

3    Donald W. MacPherson
     3404 W. Cheryl Dr., #A250
4    Phoenix, AZ  85051
     Ph. 602-866-9566
5    Fax 602-866-3799
     Bar #005627
6    Counsel for Defendant
     (Pro Hac Vice Application Pending)
7

8    John Mitchell
     2445 5th Avenue, #200
9    San Diego, CA  92101
     Ph. 619-237-9155
10   Fax 619-237-0128
     Local Counsel
11
     Copy of the foregoing mailed
12   this ___ day of December, 1998 date, to:

13   James Brannigan
     Asst. U.S. Attorney
14   Federal Building
     880 Front Street, Rm. 6293
15   San Diego, CA  92101-8893
     Ph. 619-557-65769
16
     Kenneth Ramsdell
17   Probation Officer
     401 W. A,  Suite 500
18   San Diego, CA  92101
     619-557-5261
19   _____
     a:psmem.con
20

21

22

23

24

25

26

27

28
                    Page 20

The MacPherson Group
A Professional Corporation
Attorneys at Law
3404 West Cheryl Drive
Suite A-250
Phoenix, Arizona 85051

## CONTE GUIDELINE CALCULATIONS
### (Before Any Downward Departure)

|  | Probation Officer | Government | Defendant |
|---|---|---|---|
| Base Offense | 6 | 6 | 6 |
| Fraud Loss | +13 | +13 | +13 |
| More than minimal planning | + 2 | + 2 | + 2 |
| Position of trust | + 2 | + 2 | 0 |
|  | --- | --- | --- |
| Adjusted Offense Level | 23 | 23 | 21 |
| Acceptance of Responsibility | - 3 | - 3 | - 3 |
|  | --- | --- | --- |
| Total Offense Level | 20 | 20 | 18 |
| Criminal History Score[1] | 5 | 6 | 3 |
| Criminal History Category | III | III | II |
| GL Range (months) | 41-51 | 41-51 | 30-37 |

Exhibit 1

a:conte\glchtrs.con

---

[1] See Exhibit 2 for calculation.

## CONTE CRIMINAL HISTORY CALCULATION

| §4A1.1 | | Probation Officer | Government | Defendant |
|---|---|---|---|---|
| (c) | Utah Federal Conviction (less than 60 days imprisonment) | 2 | 2 | 1 |
| (c) | Utah State Conviction (vacated) | 1 | 1 | 0 |
| (d) | Offense Committed While on Probation | 2 | 2 | 2 |
| (e) | Offense Committed Within 2 Years of Prior Offense | 0 | 1 | 0 |
| | Total | 5 | 6 | 3 |

CONTE'S §4A1.1 analysis: The Utah federal conviction resulted in a "sentence of imprisonment" of about 45 days, less than 60 days, thus (c), not (b) applies.  The Utah state conviction was vacated, and thus, does not apply.  There is no application of (e) because there is no (a) or (b).

Exhibit 2

a:conte\glchtrs.con

10-25-94 03:38PM   FROM KEN MURDOCK          TO 916029228453        P001/006

# FACSIMILE COVER SHEET



**Nature's Way Products, Inc.**
10 Mountain Springs Parkway
P.O. Box 4000
Springville, UT  84663

FAX Group
and Group
(801) 489-170
voice (801) 489-150

Sent to: **Russ Conte** _____  Fax No: **602-922-8453** _____

_____

_____

_____

From   **Lorraine Clark** _____  Date  **October 25, 1994** _____

Total number of pages  **6**  (including this cover sheet). If all pages are not received, please contact us immediately.

**Message/Delivery Instructions:**

Russ:

Sherri and Steve, the two I work with at Deloitte and Touche, are at a seminar all week.  I left a message for them to call me the first of the week.  I will follow-up with them and get back to you when I hear from them.

Attached is the amortization schedule.

**CON 04545**

$EX. 3$          1/6

The information contained in this facsimile message is privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication prohibited. If you have received this communication in error, please immediately notify us by telephone and return the original message to us at the above address via the U.S. Postal Service.

10-25-94 03:38PM  FROM KEN MURDOCK          TO 916029228453        P002/006

| Deloitte<br>Haskins+Sells | INTEREST | Release |
|---|---|---|

Job:KEN      Problem:amortization          Prepared by _____ Date __

Run on 10/14/94 at 10:53                    Reviewed by _____ Date __

### RESTATEMENT OF PROBLEM ELEMENTS

Problem Type:
    Present Value of a Series of Payments, With
    Payments at the Beginning of the Period

Known Variables:
    Periods per Year ............        12
    Present Value................  $22,051.00
    Annual Nominal Interest Rate.  +5.00000%
    Total Number of Periods......     60.00

Unknown Variable:
    Payment......................   $414.40

CON 04546

Note: The solution was calculated based on the annual nominal interest rate a
    number of periods per year. Interest is computed and compounded based o
    periods of equal length which are determined by the number of periods p
    year. The effective annual interest rate in this application is   5.116

EX. 3          2/6

10-25-94 03:38PM   FROM KEN MURDOCK          TO 916029228453        P003/006

**Deloitte**
**Haskins+Sells**                        INTEREST                        Release

Job:KEN      Problem:amortization          Prepared by _____ Date __

Run on 10/14/94 at 10:53                   Reviewed by _____ Date __

### ACCRUAL BASIS SCHEDULE AS OF THE END OF THE PERIOD

| PERIOD | PAYMENT | INTEREST | PRINCIPAL | BALANCE |
|---|---|---|---|---|
| 10 | 414.40 | 90.15 | 324.25 | 21,726.75 |
| 11 | 414.40 | 88.80 | 325.60 | 21,401.15 |
| 12 | 414.40 | 87.44 | 326.96 | 21,074.19 |
| 1993 | 1,243.20 | 266.39 | 976.81 | 21,074.19 |
| 1 | 414.40 | 86.08 | 320.32 | 20,745.87 |
| 2 | 414.40 | 84.71 | 329.69 | 20,416.18 |
| 3 | 414.40 | 83.34 | 331.06 | 20,085.12 |
| 4 | 414.40 | 81.96 | 332.44 | 19,752.68 |
| 5 | 414.40 | 80.58 | 333.82 | 19,418.86 |
| 6 | 414.40 | 79.19 | 335.21 | 19,083.65 |
| 7 | 414.40 | 77.79 | 336.61 | 18,747.04 |
| 8 | 414.40 | 76.39 | 338.01 | 18,409.03 |
| 9 | 414.40 | 74.98 | 339.42 | 18,069.61 |
| 10 | 414.40 | 73.56 | 340.84 | 17,728.77 |
| 11 | 414.40 | 72.14 | 342.26 | 17,386.51 |
| 12 | 414.40 | 70.72 | 343.68 | 17,042.83 |
| 1994 | 4,972.80 | 941.44 | 4,031.36 | 17,042.83 |

CON 04547

3/6

10-25-94 03:38PM   FROM KEN MURDOCK         TO 916029228453        P004/006

**Deloitte**
**Haskins+Sells**                    INTEREST                      Release

Job:KEN      Problem:amortization              Prepared by _____ Date __

Run on 10/14/94 at 10:53                       Reviewed by _____ Date __

### ACCRUAL BASIS SCHEDULE AS OF THE END OF THE PERIOD

| PERIOD | PAYMENT | INTEREST | PRINCIPAL | BALANCE |
|---|---|---|---|---|
| 1 | 414.40 | 69.29 | 345.11 | 16,697.72 |
| 2 | 414.40 | 67.85 | 346.55 | 16,351.17 |
| 3 | 414.40 | 66.40 | 348.00 | 16,003.17 |
| 4 | 414.40 | 64.95 | 349.45 | 15,653.72 |
| 5 | 414.40 | 63.50 | 350.90 | 15,302.82 |
| 6 | 414.40 | 62.04 | 352.36 | 14,950.46 |
| 7 | 414.40 | 60.57 | 353.83 | 14,596.63 |
| 8 | 414.40 | 59.09 | 355.31 | 14,241.32 |
| 9 | 414.40 | 57.61 | 356.79 | 13,884.53 |
| 10 | 414.40 | 56.13 | 358.27 | 13,526.26 |
| 11 | 414.40 | 54.63 | 359.77 | 13,166.49 |
| 12 | 414.40 | 53.13 | 361.27 | 12,805.22 |
| 1995 | 4,972.80 | 735.19 | 4,237.61 | 12,805.22 |
| 1 | 414.40 | 51.63 | 362.77 | 12,442.45 |
| 2 | 414.40 | 50.12 | 364.28 | 12,078.17 |
| 3 | 414.40 | 48.60 | 365.80 | 11,712.37 |
| 4 | 414.40 | 47.07 | 367.33 | 11,345.04 |
| 5 | 414.40 | 45.54 | 368.86 | 10,976.18 |
| 6 | 414.40 | 44.01 | 370.39 | 10,605.79 |
| 7 | 414.40 | 42.46 | 371.94 | 10,233.85 |
| 8 | 414.40 | 40.91 | 373.49 | 9,860.36 |
| 9 | 414.40 | 39.36 | 375.04 | 9,485.32 |
| 10 | 414.40 | 37.80 | 376.60 | 9,108.72 |
| 11 | 414.40 | 36.23 | 378.17 | 8,730.55 |
| 12 | 414.40 | 34.65 | 379.75 | 8,350.80 |
| 1996 | 4,972.80 | 518.38 | 4,454.42 | 8,350.80 |

CON 04548

4/6

10-25-94 03:38PM   FROM KEN MURDOCK        TO 916029228453        P005/006

Deloitte
Haskins+Sells                     INTEREST                        Release

Job:KEN      Problem:amortization          Prepared by _____ Date __

Run on 10/14/94 at 10:53                   Reviewed by _____ Date __

### ACCRUAL BASIS SCHEDULE AS OF THE END OF THE PERIOD

| PERIOD | PAYMENT | INTEREST | PRINCIPAL | BALANCE |
|--------|---------|----------|-----------|---------|
| 1 | 414.40 | 33.07 | 381.33 | 7,969.47 |
| 2 | 414.40 | 31.48 | 382.92 | 7,586.55 |
| 3 | 414.40 | 29.88 | 384.52 | 7,202.03 |
| 4 | 414.40 | 28.28 | 386.12 | 6,815.91 |
| 5 | 414.40 | 26.67 | 387.73 | 6,428.18 |
| 6 | 414.40 | 25.06 | 389.34 | 6,038.84 |
| 7 | 414.40 | 23.44 | 390.96 | 5,647.88 |
| 8 | 414.40 | 21.81 | 392.59 | 5,255.29 |
| 9 | 414.40 | 20.17 | 394.23 | 4,861.06 |
| 10 | 414.40 | 18.53 | 395.87 | 4,465.19 |
| 11 | 414.40 | 16.88 | 397.52 | 4,067.67 |
| 12 | 414.40 | 15.22 | 399.18 | 3,668.49 |
| 1997 | 4,972.80 | 290.49 | 4,682.31 | 3,668.49 |
| | | | | |
| 1 | 414.40 | 13.56 | 400.84 | 3,267.65 |
| 2 | 414.40 | 11.89 | 402.51 | 2,865.14 |
| 3 | 414.40 | 10.21 | 404.19 | 2,460.95 |
| 4 | 414.40 | 8.53 | 405.87 | 2,055.08 |
| 5 | 414.40 | 6.84 | 407.56 | 1,647.52 |
| 6 | 414.40 | 5.14 | 409.26 | 1,238.26 |
| 7 | 414.40 | 3.43 | 410.97 | 827.29 |
| 8 | 414.40 | 1.72 | 412.68 | 414.61 |
| 9 | 414.61 | 0.00 | 414.61 | 0.00 |
| 1998 | 3,729.81 | 61.32 | 3,668.49 | 0.00 |

CON 04549

5/6

10-25-94 03:38PM    FROM KEN MURDOCK         TO 916029228453        P006/006

**Deloitte**
**Haskins+Sells**                    INTEREST                              Release

Job:KEN      Problem:amortization          Prepared by _____ Date __

Run on 10/14/94 at 10:53                   Reviewed by _____ Date __

ACCRUAL BASIS SCHEDULE AS OF THE END OF THE PERIOD
-----------------------------------------------------

| PERIOD | PAYMENT | INTEREST | PRINCIPAL | BALANCE |
|--------|---------|----------|-----------|---------|
| TOTAL  | 24,864.21 | 2,813.21 | 22,051.00 | 0.00 |

Note: The last payment of this problem includes a cumulative rounding
      difference caused by rounding interest amounts to whole cents in the
      amortization schedule. The amount of the rounding difference in the
      last payment is $    0.21 .

CON 04550

6/6

FAX'ED

Dec 1, 94

#/243.

Dec 5, 94



Ex 4

1/1

'8 07:10' MICHAEL          603 266 1060          P.03





2/2

# SENTENCING SUMMARY CHART

USPO ___
AUSA ___
DEF ☒

Defendant's Name: _Russell J. Conte_    Docket No. _98-0519 JM_

Guideline Manual Used: November 1, _1998_    Agree with USPO Calc.: ___

Base Offense Level: (Drug Quantity, If Applicable: _____ )    _6_

Special Offense Characteristics:

_Loss  Sec. 2F1.1(b)(N)_ _____    _+13_

_More than minimal planning Sec. 2F1.1(b)(2)(A)_    _+ 2_

_____    ___

_____    ___

_____    ___

Victim Related Adjustment:    ___

Adjustment for Role in the Offense:    ___

Adjustment for Obstruction of Justice:    ___

Adjustment for Reckless Endangerment During Flight:    ___

Adjusted Offense Level:    _21_

☐ Combined (Mult. Counts)    ☐ Career Off.    ☐ Armed Career Crim.

Adjustment for Acceptance of Responsibility:    _- 3_

Total Offense Level:    _18_

Criminal History Score:    _3_

Criminal History Category:    _II_

☐ Career Offender    ☐ Armed Career Criminal

Guideline Range:    from _30_

(Range limited by:    ☐ minimum mand.    ☐ stat. maximum)    to _37_ mnths

Departures:

_See Motion: POST OFFENSE REHAB;_    _-10_

_DIMINISHED CAPACITY, etc._    _= 8 TOL:_

_8-14 mos._

::ODMA\PCDOCS\WORDPERFECT\12401\2    67    Print Date: August 20, 1997

TOTAL P.05

_EX. 5_